# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

Sam Glasscock III
Vice Chancellor

Court of Chancery Courthouse
34 The Circle
Georgetown, Delaware 19947

June 12, 2020

Kevin M. Gallagher
John M. O'Toole
Christian C.F. Roberts
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Richard A. Barkasy
SCHNADER HARRISON SEGAL &
LEWIS LLP
824 North Market Street, Suite 800
Wilmington, DE 19801

Richard A. Rowzie
#1080129
Deerfield Correctional Center
21360 Deerfield Drive
Capron, VA 23829

Isaac Bensimon
520 SW 1st Ave
Hallandale Beach, FL 33009

John Mattera, obo Ann Mattera
Reg # 97650-004
FPC Atlanta
PO Box 150160
Atlanta, GA 30315

Carlyle Johnson
AU-4855
P.O. Box 5248 / B1-1-4-Low
Corcoran, CA 93212

Charles Jeffery Rhodes
Sean Herrmann, Esquire
HERRMANN & MURPHY, PLLC

RE: *In re Swisher Hygiene, Inc.; 2018-0080-SG; Motion for First Interim Distribution to Stockholders and Motions to Substantiate Claims*

Dear Litigants:

This Letter Opinion addresses the Motion for First Interim Distribution to Stockholders (the "Motion for Distribution") filed by Swisher Hygiene, Inc. ("Swisher") and the opposition to that motion from Honeycrest Holdings, Ltd. ("Honeycrest"). This Letter Opinion also addresses the creditor claims against Swisher filed by Richard A. Rowzie, Isaac Bensimon, John Mattera, Carlyle Johnson, and Charles Jeffery Rhodes (together with Honeycrest, the "Respondents").

## I. BACKGROUND[1]

Swisher, after selling its operating assets, filed a certificate of dissolution on May 27, 2016.[2] It proceeded to notify all potential creditors of the dissolution.[3] Once the claims period expired, Swisher filed a Verified Petition for Dissolution

---

[1] I draw these facts from the parties' papers, which were supported with evidence submitted under affidavit, as well as the parties' representations at the April 28, 2020 hearing.

[2] Verified Petition for Dissolution Pursuant to 8 *Del. C.* Section 280, Docket Item ("D.I.") 1 ("Petition for Dissolution"), Ex. A, Certificate of Dissolution of Swisher Hygiene, Inc.

[3] Petition for Dissolution, ¶¶ 7–13.

Pursuant to 8 *Del. C.* § 280 on February 6, 2018 (the "Petition").[4] As a part of the Petition, it seeks determination under 8 *Del. C.* § 280 of an amount constituting sufficient security to cover wind-down costs, pending litigation, prospective claims, as well as any unknown or unripe claims.[5]

Through the dissolution process, Swisher has successfully resolved most of the major claims and pending litigation against it, and as of the date of this Letter Opinion, only five claims and one litigation matter remain outstanding.[6] On June 27, 2019, Swisher filed the Motion for Distribution, as well as a motion seeking approval of a process to resolve or set a reserve for the remaining creditor claims and litigation matters.[7] On December 16, 2019, I granted an order governing further proceedings (the "Scheduling Order").[8] Under the Scheduling Order, several of the Respondents moved to substantiate their claims, and Honeycrest opposed Swisher's Motion for Distribution.[9]

---

[4] *Id.*

[5] *Id.* at 40.

[6] *See* Pet'r Swisher Hygiene Inc.'s Omnibus Br. in Further Support of its Distribution Mot. and in Opp'n to the Mots. to Substantiate Claim, D.I. 95 ("Swisher Reply Br."), at 2–4; Order Resolving Claim Asserted by 2208742 Ontario Inc., D.I. 105; Order Resolving Claim Asserted by Ecolab Inc., D.I. 106.

[7] Pet'r Swisher Hygiene Inc.'s Mot. for First Interim Distribution to Stockholders, D.I. 48; Pet'r Swisher Hygiene Inc.'s Mot. for Approval of Proposed Process, D.I. 49.

[8] Scheduling Order Governing Further Proceedings, D.I. 77 ("Scheduling Order").

[9] D.I. 82, D.I. 83, D.I. 84, D.I. 89, D.I. 91, D.I. 92, D.I. 98, D.I. 99.

Currently, Swisher has Net Assets in Liquidation of approximately $16.279 million. In addition, it has placed a liability of $1.667 million on its books related to the Honeycrest litigation.[10] Through its Motion for Distribution, it seeks to distribute $10 million to its stockholders, thus maintaining a reserve of $6.279 million, in addition to the $1.667 million related to the Honeycrest litigation. I heard argument from all parties on April 28, 2020, and I informed the parties that I would take the matter under consideration.

## II. ANALYSIS

Under 8 *Del. C.* § 280(c)(1), a corporation that has properly provided notice to potential claimants "shall petition the Court of Chancery to determine the amount and form of security that will be reasonably likely to be sufficient to provide compensation for any claim against the corporation which is the subject of a pending action, suit or proceeding to which the corporation is a party. . ."[11] If such a reserve is adequate, an interim distribution may be proper.[12] Under the Scheduling Order, the Respondents had 45 days to oppose the Motion for Distribution and substantiate their claims.[13] If the Respondents failed to do either, then their claims would be

---

[10] Swisher Reply Br., at 33–34.

[11] 8 *Del. C.* § 280(c)(1).

[12] *See In re Sobieski Bancorp, Inc.*, 2006 WL 4782384 (Del. Ch. Aug. 14, 2006) (ORDER); *In re Geomet, Inc.*, 2017 WL 319053 (Del. Ch. Jan. 20, 2017) (ORDER).

[13] Scheduling Order, ¶ 1(c).

deemed barred.[14]  Below, I address the Respondents' motions to substantiate their claims, after which I address Honeycrest's opposition to the Motion for Distribution.

*Isaac Bensimon.*  Bensimon alleges that in August 1995, 200,000 shares of a company that was a predecessor to Swisher were issued in his name but without his knowledge; six days later, the shares were cancelled, purportedly by the entity's controller, forging Bensimon's signature.[15]  He alleges he first discovered this fraud in 2014.[16]  Accordingly, he argues that the cancellation was invalid due to fraud, that he remains a stockholder, and that he is entitled to a *pro rata* distribution with other stockholders.[17]  Bensimon's fraud claim is not against Swisher.  He does not allege that Swisher caused either the clandestine issuance or the purportedly fraudulent cancellation.[18]  While the *relief* he seeks takes the form of Swisher assets, he does not allege Swisher was a wrongdoer, and so a *creditor's* claim against Swisher is not an available remedy.  I therefore deny Bensimon's motion to substantiate his claim without prejudice to the legal issues therein or his ability to pursue his fraud claim

---

[14] *Id.* ¶ 1(f)-(g).

[15] Claimant Isaac Bensimon's Mot. to Validate his Claim in Accordance with Notice of Process to Resolve Remaining Claims to Certain Claims of Swisher Hygiene, Inc. ("Bensimon Claim"), D.I. 89, at 1–2; Claimant Isaac Bensimon's Reply, D.I. 98 ("Bensimon Reply"), at 2.

[16] Bensimon Claim, at 2.

[17] *Id.*

[18] Bensimon vaguely asserts that "Swisher Hygiene (or its predecessor(s) were involved in the transaction but nevertheless refuse to accept its complicity in the void transaction. . ." Bensimon Reply, at 2.  Bensimon offers no further details on the involvement of Swisher or its predecessors.  Nor has he filed a fraud claim against Swisher.

against any fraudster. Swisher therefore need not reserve assets based on Bensimon's creditor claim.[19]

*Richard Rowzie.* Rowzie filed a motion to substantiate his claim on October 28, 2019 and refiled in accordance with the Scheduling Order on December 31, 2019. Rowzie seeks $4,072 for investigative services he alleges he provided to Swisher. Swisher argues that it has no record of these services. Rowzie is currently incarcerated, and so he is unable to obtain the documentation he asserts would support his claim. At the April 28, 2020 hearing, Swisher consented to reserve the full amount of Rowzie's claim, $4,072, with the merits to be resolved later. I therefore order Swisher to reserve $4,072 without prejudice to either party regarding the merits of the claim.

*John Mattera.*[20] Mattera did not appear telephonically at the April 28, 2020 hearing, and so I consider his motion to substantiate his claim submitted on the papers. Mattera alleges that in 2011 his mother, Ann Mattera, purchased $1,466,643 worth of Swisher stock, then sold it a few months later for a loss of $524,900.50.[21] In 2014, Mattera received notice of a class action lawsuit against Swisher, but after

---

[19] Under this analysis, I need not determine the likelihood that Bensimon's claim is stale.

[20] John Mattera brings the claim on behalf of his mother, Ann Mattera, for whom he has power of attorney.

[21] Motion to Validate Claims Submitted Directly to Swisher Hygiene, Inc., D.I. 92 ("Mattera Claim"), Ex. A, at 1.

reviewing the details of the lawsuit, he opted out of the class.[22] He then wrote a letter to Swisher on October 31, 2015 seeking a settlement for the losses Ann Mattera incurred.[23] Mattera did not take any legal action until November 26, 2018, when he opposed Swisher's Motion for Approval of Proposed Process in this matter.[24] Mattera articulates only general bases for his claim: he alleges the "loss [was] incurred by Swisher's Fraud, Negligence, Breach of Fiduciary Duty, and several other claims that just do not include securities fraud."[25] Mattera offers no evidence to support these allegations beyond showing that Ann Mattera owned the shares and sold them at a loss. Based on the lack of evidence, Mattera has failed to substantiate his creditor claim. Therefore, Swisher does not need to reserve any assets based on Mattera's creditor claim.

It appears from his filings that Mattera plans to sue Swisher in the future for fraud and breach of fiduciary duty claims. I find that Swisher need not reserve any assets based on the possibility of such litigation because Mattera's lawsuit, if filed, would most likely be time-barred due to laches. Equity applies the analogous legal statute of limitations absent "unusual or mitigating circumstances."[26] The statute of

---

[22] Mattera Claim, Ex. A, at 1; Mattera Claim, Ex. D.

[23] Mattera Claim, Ex. A.

[24] *See* Claimant, John A. Mattera's Obj. to Pet'r's Mot. for Approval of Proposed Process and to Effectuate Settlement of Payments, D.I. 20.

[25] Mattera Claim, at 6.

[26] *Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1064 (Del. Ch. 1989).

limitations for fraud is three years and the statute of limitations for securities fraud is two years.[27] Even if tolled, the statute begins to run once the plaintiff is on inquiry notice.[28] Suspicious facts, or "red flags," require a plaintiff to "diligently investigate and to file within the limitations period as measured from that time."[29] Mattera reviewed the details of a class action lawsuit against Swisher in 2014 and opted out. Instead of taking legal action, he attempted to settle with Swisher out of court as early as October 31, 2015 based on the purported wrongdoing. These actions show that he was most likely on notice of his claims in 2014 and 2015, but the earliest action he took in this Court was more than three years after these dates, on November 26, 2018. Therefore, even if Mattera were to bring future legal action, his claims would likely be time-barred, and so, without prejudice to claims Mattera may bring, Swisher need not reserve assets based on the possibility of such litigation.

*Carlyle Johnson.* Johnson did not seek to substantiate his claim or oppose Swisher's Motion for Distribution. His claim is barred under the Scheduling Order, and Swisher need not reserve assets based on his claim.

---

[27] 10 *Del. C.* § 8106; 28 U.S.C.A. § 1658(b)(1).

[28] *Pomeranz v. Museum Partners, L.P.*, 2005 WL 217039, at \*13 (Del. Ch. Jan. 24, 2005); *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).

[29] *Pomeranz*, 2005 WL 217039, at \*13; *In re Primedia, Inc. S'holder Litig.*, 2013 WL 6797114, at \*13 (Del. Ch. Dec. 20, 2013).

*Charles Jeffery Rhodes.* Rhodes did not seek to substantiate his claim or oppose Swisher's Motion for Distribution. His claim is barred under the Scheduling Order, and Swisher need not reserve assets based on his claim.

*Honeycrest.* Honeycrest is a plaintiff in three lawsuits in New York against Swisher.[30] It does not seek to substantiate its claims here; rather, it opposes Swisher's Motion for Distribution, arguing that *any* distribution would reduce the value of its potential judgment in New York. It values its New York lawsuits at $17,749,000.[31] Honeycrest filed those lawsuits in 1998 and 2001 (it brought a third lawsuit in 2017 for sanctions).[32] In 2003, Honeycrest and Swisher entered a tentative settlement agreement under which Swisher would pay Honeycrest $1.8 million in cash and transfer two product lines to it.[33] Although that settlement agreement never finalized, Honeycrest places a present value on that settlement of "between $6.9 million and $9.2 million."[34] Swisher disagrees, arguing that the principle value of the settlement resided in the $1.8 million cash portion. Using the cash portion of the

---

[30] *See* Honeycrest Holdings, LTD's Obj. to the Pet'r, Swisher Hygiene Inc.'s Mot. for First Interim Distribution to Stockholders, D.I. 91, Aff. of Richard C. Yeskoo ("Yeskoo Aff.").

[31] *Id.* ¶ 45.

[32] *Id.* ¶¶ 4, 38.

[33] *Id.* ¶¶ 102–103.

[34] *Id.* ¶¶ 104–107.

settlement to value that litigation, Swisher has placed a $1.667 million liability on its books.[35]

Honeycrest's evidence shows that the New York litigation has some merit. Swisher points out, however, that the New York litigation is two decades old, its resolution remains unclear, trial has not been set, and Honeycrest's assigned value is a best-case scenario. As noted, Honeycrest values the proposed settlement between $6.9 million and $9.2 million. Swisher values it at $1.667 million. Of the remaining creditor claims, I have only required Swisher to reserve a total of $4,072 based on Rowzie's claim. Therefore, based on Swisher's most recent representations, the $10 million distribution Swisher seeks here would leave a total of around $7.94 million of liquid assets.[36]

Under 8 *Del. C.* § 280, I am not required to guarantee that the full amount of any judgment Honeycrest *could* achieve in its New York lawsuits remains available. Rather, under 8 *Del. C.* § 280(c)(1), I must determine an amount "reasonably likely to be sufficient to provide compensation for any claim against the corporation which

---

[35] Swisher Reply Br., at 33–34.

[36] This is the sum of the amount Swisher has placed on its books as a liability for the Honeycrest litigation ($1.667 million) and the amount it represents would remain as liquid assets after the $10 million interim distribution ($6.279 million), taking into account a reserve of $4,072 for Rowzie's claim. *See* Argument Tr., D.I. 113, at 31:19–32:2 (Court: [L]et's assume that the only claim remaining is the Honeycrest claim. If there is a $10 million distribution, tell me the sum of the reserve and the cash that would remain on hand at that point. Swisher Counsel: It would be approximately $8 million. It would be 6.279 million plus 1.67 of the reserve.").

is the subject of a pending action, suit or proceeding. . ."[37]  Based on the factors examined above, I find that a reserve of $6.9 million by Swisher for the Honeycrest litigation is reasonably, in fact amply, likely to satisfy any judgment obtained by Honeycrest.  The proposed distribution would satisfy this reserve.[38]  Therefore, I grant Swisher's Motion for Distribution.

To the extent the foregoing requires an order to take effect, it is SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[37] 8 *Del. C.* § 280(c)(1).

[38] *See* note 36, *supra*.